523-1150-WC, City of Waterloo, Appellant by Matthew Kelly v. Illinois Workers' Compensation Comm'n, et al., David Dwight Lowless, Appellee by David Jerome. Mr. Kelly, you may proceed. Yes, sir. Council, your honors, may it please the court, on behalf of the City of Waterloo, I'd like to ask the court to reverse the decision of the commission as affirmed by the circuit court. It's respondent's position that this matter is clearly against the manifest weight of the evidence. There are a number of issues associated with this claim. There are multiple versions of the accident. I think a simple review of those multiple versions of the accident should be for the court to come to that conclusion. But there is petitioner's disability pension application. There is his testimony at trial. There is Dr. Solomon's testimony, which none of the previous bodies seem to have paid any attention to. And then there is what actually happened on the dash cam videos. I think when considering all of that evidence, there is no conclusion, but the decision below was against the manifest weight of the evidence. Dr. Solomon reviewed the dash cam videos in great detail and came to the conclusion that the accident happened at a different place and a different time than that to which petitioner testified. When asked could it have happened when petitioner says it happened, Dr. Solomon's testimony was yes, that it might have happened then, but he had reviewed those videos and that's not when it happened. It happened when petitioner was affording the suspect the field sobriety test. Dr. Solomon's unequivocal testimony as to the onset of accident should be sufficient for this body to conclude that petitioner failed to sustain his burden of proof and that any decision that finds otherwise is against the manifest weight of the evidence. I know at some point in time petitioner's attorney will raise in his argument that I am somehow demeaning the actions of a decorated police officer. This is not about whether petitioner is a police officer. It's unfortunate that a police officer has gone down this path, but this is not a question of whether he's a police officer or whether I respect or do not respect police officers. I certainly respect police officers. This is not about that. This is about whether this decision below was against the manifest weight of the evidence and it's unfortunate that this man chose to go down the path he did. The other issue that I'd like to hammer on a little bit is petitioner's past medical history. He was certainly disingenuous about that in connection with his testimony. He was disingenuous about his ability to perform the full functions of his job prior to his claimed date of accident. He testified so, but he was seeing Dr. Fox in the months leading up to his date of accident requesting bilateral knee injections for the sole purpose of being able to pass fitness for duty examinations. That is not someone who is performing his full job duties without concern if he needs knee injections just to pass a fitness for duty examination. The testimony of his fellow officer also substantiated that Mr. Lowless was not performing his full job duties at the time of this incident. There's clearly discussions of bilateral knee surgeries prior to this date of accident. Petitioner advised Dr. Fox at one point in time that he just needed to get to his police retirement before he pursued any surgical intervention. Dr. Solomon confirmed that Dr. Fox had addressed bilateral knee surgeries with petitioner as well. The pre-accident dash cam videos also established that this gentleman was limping badly before this date of accident, not only months before this date of accident, but in the immediate weeks leading up to this date of accident. The dash cam video at the time of the accident shows him limping badly as the whole thing begins before he even has contact with the driver, shows the whole incident where he claims it occurred, and there is no visible indication of any sort that an incident happened at that point in time. His flashlight bobbed is a red herring. Every time this man took a step his flashlight bobbed, he testified that he had never had such pain in this knee that he's had 24 injections into prior to this date of accident as he did with this date of accident, and yet there's no visible indication of it at any point in time in the dash cam videos. We have the dash cam videos. Council, let me just cut in and ask a question here if I could. You seem to be attacking the credibility and asking us to reevaluate the credibility of the claimant. That's not what we do. Isn't that for the commission? Haven't they done so? The commission does establish, does address and establish the credibility of the witnesses. That is absolutely true, and it's a little hard for me to take the argument manifest way to the evidence out of the issues I have with what petitioner said and what petitioner did. I think perhaps it's a novel argument for the appellate court, but I think if there are sufficient egregious mistakes in addressing an individual's credibility, that goes to the manifest way to the evidence, and here there certainly seem to me to be sufficient egregious errors in assessing the party's credibility below, but if you take strictly that out, we're back to Dr. Solomon's testimony. The only testimony that establishes medical causation to an accident here comes from a doctor who established it to an incident that happened some 10 minutes before petitioner claimed his accident happened. I raised this issue with the one of the commissioners was so what? Well, so what? The only medical expert who addresses causation in this case addresses causation to an incident that never happened. I do not know how the arbitrator, the commission or the court could establish medical causation based on, could establish an accident and causation based on medical testimony from an expert who unapologetically stated that this accident happened while he was providing the field variety tests. Petitioner looked directly in the camera. He was providing the fields of variety tests, and that's when this incident happened, not later when he was escorting this individual back to the back seat of his vehicle. So to be fair, the commission took great issue with the fact that this particular doctor hadn't examined the knee prior to surgery. Isn't that right? Um, well, the doctor I'm referencing is petitioners, Dr. Dr. Solomon, and Dr. Solomon is the one who did the surgery. So the only physician I'm right, you're right, you're right. I'm I'm confusing the cross. Yeah. And neither the two doctors respondents sent petitioner to had the dash cam videos available to them. There's no explanation in the record for that. But, but I assume the court can figure out. Well, again, there's no explanation for that. So the testimony from the two, the reports from the two doctors that saw a petition on behalf of respondent don't address the dash cam videos. The dash cam videos seem pretty straightforward to me, to my client. They don't establish that this fellow had an accident when he said he did. Uh, they don't indicate anything to suggest the accident had an accident when he said he did. Dr. Solomon looked at it and said he didn't have an accident when petitioner says he did. Dr. Solomon says he had an accident at a different point during this event. So again, I think all of that taken taken into consideration leads to the only conclusion that, uh, the decisions below were against the manifest way to the evidence and should be reversed. Thank you. Questions from the court. Mr. Jerome, you may respond. Thank you, your honor. May it please the court and counsel. Good morning. My name is David Jerome and I do represent the Appley and the injured worker, Sergeant Dwight Lowless in this matter. I'll be very brief. I won't need all 15 minutes for this. Um, as the appellant and the employer noted in his brief, the case before you is one of manifest weight. And what that means is the commission's conclusions should be affirmed unless there is the opposite conclusion is clearly apparent. We're not talking about reweighing the evidence. We're not, we're simply going to be looking at whether there's sufficient evidence to support the commission's conclusions. And in this matter, the arbitrator, as well as all three commissioners, they reviewed the evidence and all four of them concluded that Sergeant Lowless twisted his knee causing an ACL tear while he was handcuffing a drunk driver, placing her in his squad car. And they're not just looking at one area that they, they draw this evidence from. They looked at the dash cam video and all four of them said, we saw an accident. They looked and weighed the credibility of the testimony of Sergeant Lowless. And they said, he's credible. They looked at the expert testimony of Dr. Solman and they weighed his testimony and found him to be credible. And they even use the employer's first medical expert, Dr. David Miller, who also said that this was a work-related event. So the commission in coming to their conclusions looked at multiple sources in determining that there was a work accident. It was compensable and the ACL tear emanated from it. Now the employer acknowledged in his brief that it is the providence of the commission to make factual determinations, to decide the weight given to the evidence, to draw reasonable inference from that evidence and to assess the credibility of the witnesses. But now in his brief in here today, he's saying, no, no, I want you to reweigh the evidence, redraw the inferences, reassess the credibility of the witnesses and come to an alternate factual conclusion from that of the conclusion. As you've heard here this he's has these attacks on Sergeant Lowless and these attacks are simply the attempts to relitigate credibility determinations already decided by the commission. Doesn't this case boil down to the question of whether the dash cam video belies the petitioner's description of how he was injured? In part, yes. It's based on the dash cam video, but it's also based on the testimony of Dr. Solman, the only doctor to have reviewed that video and these discussions about how he had it wrong, that's not accurate. That was a cross-examination question that the doctor said, I reviewed that several months before when I prepared my report. I saw the actual event whenever this occurred. And so to me, it's also Dr. Solman assessing whether or not that dash cam video is enough and does show that event. And so the commission said, we believe Dr. Solman, we believed Sergeant Lowless and we believe the dash cam video, but you're right. The dash cam video is one of the major components to all of this because it shows the accident itself, regardless of credibility, it shows the accident. So what the employer is attempting to do here this morning and in their brief, they're trying to do something that the standards of a review simply don't allow. The factual conclusions that were noted by the commission are supported by multiple areas of evidence, including the testimony of Sergeant Lowless, who was found to be credible. So there are multiple areas, multiple locations from which the commission draws their final factual conclusions upon which they based their final conclusion on this in determining that this case was fully compensable. Was he found to be credible about? He was found to be. Video belying his testimony. Well, he was found to be credible relative to the accident itself. They did not mean, obviously, if they were saying you did not, your testimony is inconsistent with the dash cam, they would have said you're not credible in that situation. Now there were questions later on about an ankle condition and they said he wasn't credible on that issue. But as far as his description matching that of the dash cam, in fact, in trial, we played the video when he was describing the exact point at which the actual trauma occurred and it showed him actually looking back to the depressed area because he said, my knee popped. He didn't fall to the ground. He was taking care of someone who was intoxicated, so he didn't fall to the ground. But in this situation, he was found to be credible relative to his description of the accident matching what the dash cam video showed. More importantly, to that very specific moment in time when he said this is where it occurred. And that's what the court said. He's credible. It matches. So here today, I'm asking simply that you affirm the decision of the commission. Can you highlight for me the inconsistency? I'm sorry, excuse me? Can you highlight for me the inconsistency of the officer? There was no inconsistency. That's just it. He was found to be credible. On the issue of ankle, they were saying, well, the ankle symptoms developed later on. So the judge said, I don't find that credibility finding can be an error. You know, it's back to what's the basis. OK, I see what you're saying in this situation. In order for there to be an error, it had to be that his testimony is wholly inconsistent with the dash cam video. And as I've said, he was consistent because, in fact, we showed the video concurrent with his testimony. So there was no inconsistency, no problems where the commission would say that's not consistent with what you're saying happened as far as the dash cam. They were completely consistent because that's what happened to trial. All right. And that's all I have. Thank you, everyone. Your voice is off again, Bill. I know. I don't know what happened. Never have the IT people from the AIC visit your office. Yeah. Is that any better? We hear you. OK, I keep moving and it gets better. I don't know. OK, Mr. Kelly, you may reply. Yes, gentlemen and ladies, very briefly. Yes, the dash cam video is critical to this case. Please take a look at the dash cam video and please take a look at the one as contained in respondent's exhibit for the one I submitted is date and time stamped. And petitioner also testified on cross-examination with the date and time stamped copy of the video. And I've identified the precise moment in respondents exhibit for that petitioner identifies as his moment of accident. It's more difficult to tell in the one that petitioner's attorney submitted because there's no date and time stamp. There's no indication of an injury, accident, incident. There's no look back. There's nothing happening at the precise moment. He identifies as his in this case. And to say that Dr. Solomon's testimony on cross-examination about when the accident happened is irrelevant. It certainly takes that out of context. Dr. Solomon did not testify to a precise accident noted in the video that he thoroughly reviewed until we got to cross-examination. And when we got to cross-examination was the first time he identified the precise accident that he saw in his thorough review of those movies. And that accident was while petitioner was providing the field sobriety tests, not while he was handcuffing and taking the driver back to the rear seat of his car. So petitioner's attorney also says the parties, the finders below relied on information from multiple locations. Well, there certainly are a variety of stories associated with this case. I'll agree with that. But I think the only one that's supported by the evidence is the one that's clearly evident on the dash cam video. And that's the one that shows that petitioner did not sustain any accidental injury that arose out of it in the course of his employment. I have nothing further if there are no questions. Bill, you're off again. Chief, I'm that way. Excellent. Well, thank you, counsel, both for your arguments in this matter. It will be taken under advisement and written disposition shall issue.